**MALLEY LAW**
JOSEPH A. MALLEY, III, ESQUIRE
Supreme Court ID No. 27866
15 East Second Street
Media, Pennsylvania 19063                    *Attorney for Plaintiff, Raymond Harris*
(610) 566-8010

---

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAYMOND HARRIS** | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **JOHN DOES**, and **JANE DOE**, and | : | No.: 2:17-cv-02874-GAM |
| **THE PHILADELPHIA PROTECTORY** | : | |
| **FOR BOYS d/b/a SAINT GABRIEL'S** | : | |
| **SYSTEM**, and | : | |
| **BROTHERS OF THE CHRISTIAN** | : | |
| **SCHOOLS - DISTRICT OF EASTERN** | : | **JURY TRIAL DEMANDED** |
| **NORTH AMERICA, INC.**, and | : | |
| **CHRISTIAN BROTHERS MAJOR** | : | |
| **SUPERIORS d/b/a DE LA SALLE** | : | |
| **BROTHERS OF THE CHRISTIAN** | : | |
| **SCHOOLS**, and | : | |
| **CATHOLIC SOCIAL SERVICES**, and | : | |
| **ARCHDIOCESE OF PHILADELPHIA**, | : | |
| *Defendants.* | : | |

---

## AMENDED COMPLAINT

COMES NOW, Raymond Harris, by and through his undersigned attorney Joseph A. Malley, III, Esquire, of MALLEY LAW, who files this civil complaint, and in support thereof states the following:

### PARTIES

1. Plaintiff Raymond Harris (hereinafter "Mr. Harris") is an adult individual residing at 4326 North Dr. Martin Luther King Street, Saint Petersburg, Florida 33703.

2. John Doe Defendant "Father Dominic" is an adult individual with a current location unknown. At all times relevant hereto, Father Dominic was employed at The Philadelphia Protectory for Boys, d/b/a Saint Gabriel's System (hereinafter "St. Gabriel's").

3. John Doe Defendant "Brother Joe Foxy" is an adult individual with a current location unknown. At all times relevant hereto, Brother Joe Foxy was employed at St. Gabriel's.

4. Jane Doe Defendant "Mrs. Monaghan" is an adult individual with a current location unknown. At all times relevant hereto, Mrs. Monaghan was employed overseeing the kitchen/pantry operations at St. Gabriel's.

5. John Doe Defendant "Mr. D'Alfonso" is an adult individual with a current location unknown. At all times relevant hereto, Mr. D'Alfonso was employed as a prefect at St. Gabriel's.

6. John Doe Defendant "Brother Robert" is an adult individual currently employed by the Archdiocese of Pittsburgh with a current location unknown. At all times relevant hereto, Brother Robert was employed as a prefect at St. Gabriel's.

7. John Doe Defendant "Brother Christopher" is an adult individual with a current location unknown. At all times relevant hereto, Brother Christopher was employed as a prefect at St. Gabriel's.

8. John Doe Defendant "Brother Arnold" is an adult individual with a current location unknown. At all times relevant hereto, Brother Arnold was employed as a prefect at St. Gabriel's.

9. John Doe Defendant "Brother Peter" is an adult individual with a current location unknown. At all times relevant hereto, Brother Christopher was employed as a prefect at St. Gabriel's.

10. Defendant The Philadelphia Protectory for Boys d/b/a Saint Gabriel's System (hereinafter "St. Gabriel's") is a Pennsylvania limited liability corporation with a principal place of business at 1350 Pawlings Road, Norristown, Pennsylvania 19401.

11. Defendant Brothers of The Christian Schools – District of Eastern North America, Inc. (hereinafter "DENA") is a Washington, District of Columbia corporation with a principal place of business at 444 A Route 35, South Eatontown, NJ 07724

12. Defendant Christian Brothers Major Superiors d/b/a De La Salle Brothers of the Christian Schools (hereinafter "Christian Brothers") is a Washington, District of Columbia entity with a principal place of business at 415 Michigan Ave NE, Suite 300, Washington, District of Columbia, 20017.

13. Defendant Catholic Social Services is a Pennsylvania entity with a principal place of business at 222 North 17th Street, 3rd Floor, Philadelphia, Pennsylvania 19103.

14. The Archdiocese of Philadelphia (hereinafter "Archdiocese") is a Pennsylvania unincorporated association with a principal place of business at 227 North 8th Street, Philadelphia, Pennsylvania 19103.

15. Defendant DENA is a division of Defendant Christian Brothers, which is responsible for its oversight and operations.

16. Defendant St. Gabriel's System is a division of Defendant Catholic Social Services, which is responsible for its oversight and operations.

17. Defendant Catholic Social Services is a division of Defendant Archdiocese, which is responsible for its oversight and operations.

18. The Archbishop is the top official at Defendant Archdiocese and has authority over all matters within the archdiocese as a result of his position.

19. The Archdiocese has numerous programs and activities which seek the participation of children.

20. The Archdiocese, through its officials, has authority and control over all organizations which operate under it.

21. Upon information and belief, Defendant Archdiocese ultimately operates, oversees, and controls each defendant entity named herein.

22. Defendant St. Gabriel's is a residential behavioral health treatment facility specifically for male youths, ages ten (10) through eighteen (18).

23. Defendant St. Gabriel's has the power to supervise, monitor, and fire each person working with the youths at St. Gabriel's.

24. Defendant DENA provided staffing for Defendant St. Gabriel's, including teachers and instructors who were responsible for carrying out the mission of the entity.

## FACTS

25. Plaintiff incorporates each and every paragraph set forth above herein, as if the same were set forth at length.

26. At all times relevant hereto, John Doe Defendants and Defendant Jane Doe were employed at St. Gabriel's, possibly through other entities.

27. Defendant St. Gabriel's had direct supervision and control over its employees.

28. Defendants allowed Defendants to have unsupervised and unlimited access to young children at St. Gabriel's.

29. Defendant St. Gabriel's is a behavioral health facility, and therefore by its nature the youths in their program are already suffering from some level of emotional harm or disturbance, and/or delinquency.

30. Individual Doe Defendants were responsible for the education, religious instruction, and spiritual and emotional guidance of the troubled youths in St. Gabriel's.

31. Upon information and belief, in or about late fall or early winter of 1967, Plaintiff Mr. Harris was placed in juvenile detention at St. Gabriel's where he remained for thirteen (13) months.

32. During his time at St. Gabriel's, Mr. Harris, along with other juveniles, was subjected to numerous egregious acts of physical, emotional, and sexual abuse at the hands of its employees.

33. On numerous occasions, Mr. Harris was beaten with a bat while naked and bent over a sink.

34. As a result of these beatings, Mr. Harris sustained permanent muscle damage.

35. On at least one occasion, Mr. Harris was forced to stand on hot asphalt while his feet sustained burns as a form of punishment.

36. Mr. Harris was subjected to countless egregious acts of physical, mental, and sexual abuse, as set forth more fully below.

37. Beginning shortly after his arrival at St. Gabriel's, Mr. Harris was forced to drink wine and perform oral sex on Doe Defendant Father Dominic.

38. Doe Defendant Father Dominic forced his penis into Mr. Harris' mouth and told him "this is the body of Christ;" Plaintiff was forced to respond "please give me the body of Christ."

39. Doe Defendants had a special relationship with Mr. Harris as a result of their authoritative position over Mr. Harris, which was exploited and violated on numerous occasions.

40. In each instance of this egregious abuse as set forth above and more fully below, each Doe Defendant was acting within the course and scope of his/her employment.

41. By holding Doe Defendants out to be safe to work with children, and by undertaking the custody, supervision and/or care of the minor Plaintiff, all Defendants were also in a special relationship with Mr. Harris.

42. By holding themselves out as being able to provide a safe environment for children, and a safe, moral, and trusted institution, Defendants solicited and/or accepted the position of empowerment over the minors; this empowerment over him prevented Mr. Harris from effectively protecting himself.

43. Mr. Harris did not consent to the abuse, nor was he able to consent as he was a minor.

44. Mr. Harris first reported the abuse shortly afterward to "Brother Peter" who was his Spanish teacher.

45. Mr. Harris told Brother Peter that he needed his tooth pulled and that Father Dominic would not do it until he performed oral sex on him.

46. As a result of this conversation, Brother Peter smacked him, using emphasis on his ringed finger, and told him "do not ever say that again."

47. Mr. Harris also told "Brother Kilpatrick" about the abuse, but Mr. Harris is unable to recall specifics of the conversation; it is believed Mr. Harris may have repressed the memory of this conversation.

48. Defendants St. Gabriel's and DENA were put on actual notice of the sexual misconduct and physical and emotional abuse by Defendant Father Dominic, and constructive notice of sexual and physical abuse of the other Doe Defendants.

49. Defendants Christian Brothers, Catholic Social Services, and Archdiocese knew or should have known about the abuse, had they adequately and appropriately monitored, trained, and supervised Defendants St. Gabriel's and DENA.

50. Despite being on actual and/or constructive notice of the abuse and clear indications of danger, no remedial actions whatsoever were taken by any Defendant.

51. Defendants took no steps to discover the specific nature of the abuse or whether or not Doe Defendants were to work with children.

52. Defendants too absolutely no steps to protect children from physical, mental, and sexual abuse, thereby increasing the likelihood that Mr. Harris and other's would be harmed.

53. In fact, Defendants took steps to hide and cover instances of abuse which they had actual knowledge of.

54. Defendants did not implement necessary policies, protocols, and penalties to protect children from the known risk of sexual abuse of minors by Catholic clergy in general.

55. Defendants owed a duty of reasonable care to Mr. Harris during his stay at St. Gabriel's as they solicited and/or assumed responsibility for all aspects of Mr. Harris' life while he was residing there.

56. Defendants had a duty to protect the health, safety, purity, and morality of Mr. Harris and the other children residing at St. Gabriel's.

57. Defendants had a duty to Mr. Harris to protect him from harm resulting from the special relationship that existed between them.

58. Defendants breached these duties owed to Mr. Harris in the following ways: exposing him to known pedophiles; exposing him to employees which Defendants should have known were pedophiles; allowing pedophiles to have unsupervised and unlimited access to minors; failing to implement and enforce policies and procedures to prevent sexual abuse of minors; failing to adequately screen, train, and monitor their employees; failing to adequately inform Mr. Harris and his family of the known risk of sexual abuse of children within the Archdiocese; holding out

employees and agents as safe and wholesome for children to be around; failing to investigate acts of physical abuse and pedophilia; failing to document instances of physical, emotional, and sexual abuse; failing to protect children from physical, emotional, and sexual abuse; failing to adhere to normal standards of care for children; failing to properly train employees to identify signs of child abuse by fellow employees; failure to investigate or take any remedial action whatsoever after being put on notice of the abuse; and failure to report the known abuse to the appropriate law enforcement agencies.

59. Defendants further breached their duties owed to Mr. Harris by hiding and covering up the physical, emotional, and sexual abuse perpetrated by individual Doe Defendants.

60. Defendants knew or should have known that pedophiles and sexual abusers have a high risk of recidivism.

61. Defendants held their clergy, religious leaders, employees, and agents out as people of his moral turpitude and taught children to obey these leaders and agents, and to respect and revere them as agents of God.

62. Doe Defendants engaged in unwanted, harmful, and offensive contact with Mr. Harris on the physical premises of St. Gabriel's on numerous occasions.

63. Upon information and belief, Defendants knew or should have known about Doe Defendants' impulses, behavior, and potential for physical and emotional abuse and sexual misconduct before Mr. Harris was abused, but failed to act on that knowledge exposing Mr. Harris to a foreseeable risk of abuse.

64. Defendant Archdiocese recognized and acknowledged the physical, emotional, and sexual abuse, and on or about April 22, 2014, the Archdiocese's Office for Child Youth and Protection

sent Mr. Harris a letter stating it would fund weekly individual counseling sessions through the Victim Assistance Program.

65. Mr. Harris continues to qualify for and be afforded individual counseling sessions, paid for by the Archdiocese, for the emotional harm suffered as a result of the abuse he endured at St. Gabriel's.

66. As outlined more fully below, Mr. Harris suffers from amnesia and repressed traumatic memories, and therefore cannot be sure how many other acts or perpetrators exist.

67. As a direct and proximate cause of the physical, mental, and sexual abuse he endured while at St. Gabriel's, Mr. Harris has been diagnosed with Dissociative Identity Disorder and Post-Traumatic Stress Disorder.

68. As a direct and proximate cause of the physical, emotional, and sexual abuse he endured while at St. Gabriel's, Mr. Harris now also suffers from the following:

   a. Permanent bodily injury and health related issues;

   b. Disruptions in consciousness and memory;

   c. Dissociative identities resulting in heard voices and amnesia;

   d. Re-experiencing of traumatic events through nightmares and flashbacks;

   e. Negative self-concept and mood states;

   f. Avoidance of trauma-related stimuli through dissociation, depersonalization, isolation, and numbing resulting in reduced awareness of himself and his environment;

   g. Hyper-arousal manifesting itself through hypervigilance, trouble concentrating, and angry outbursts;

   h. Insomnia;

     i.   Humiliation;

     j.   Past substance abuse and criminality;

     k.   Lack of self-confidence and self-worth; and

     l.   Problems establishing and maintaining relationships.

69.  As a direct and proximate cause of the physical, emotional, and sexual abuse suffered, Mr. Harris continually struggles to maintain his eight (8) year sobriety and avoid self-medicating to repress the effects mentioned above.

70. As a direct and proximate cause of the physical, emotional, and sexual abuse suffered, Mr. Harris struggles to engage in normal daily activities and obtain full enjoyment of life.

71. Mr. Harris has treated with a psychologist continually since summer of 2013 for the emotional harm caused by the abuse by its employees during his time at St. Gabriel's.

72. Mr. Harris' treating psychologist estimates that it will take a minimum of two (2) to four (4) years of weekly treatment to progress to a point where dissociation is no longer needed for coping.

## COUNT I – NEGLIGENCE AGAINST ALL ENTITY DEFENDANTS

73. Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

74. Defendants owed a duty of care to Plaintiff while he was in their facility.

75. Defendants had a duty to provide a safe environment for Plaintiff where he would be free from violations of person and intentional acts of sexual abuse.

76. Defendants knew or should have known that Doe Defendants were not fit to supervise children.

77. Defendants breached their duties to Plaintiff.

78. As a direct result of Defendants' breach, Plaintiff suffered numerous acts of sexual abuse, resulting in damages as set forth more fully above.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Seventy-Five Thousand Dollars ($75,000).

## COUNT II – BREACH OF A SPECIAL RELATIONSHIP

## AGAINST ALL DEFENDANTS

79. Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

80. Defendants had a duty to protect Plaintiff based upon the special relationship between Defendants and Plaintiff.

81. Defendants owed a duty of care to Plaintiff while he was in their facility.

82. Defendants had a duty to provide a safe environment for Plaintiff where he would be free from violations of person and intentional acts of sexual abuse.

83. Defendants knew or should have known that Doe Defendants were not fit to supervise or be alone with children.

84. Defendants breached their duties to Plaintiff.

85. As a direct result of Defendants' breach, Plaintiff suffered numerous acts of sexual abuse, resulting in damages as set forth more fully above.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Seventy-Five Thousand Dollars ($75,000).

## COUNT III – NEGLIGENT HIRING AGAINST

## THE ARCHDIOCESE OF PHILADELPHIA

86. Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

87. Defendants owed a duty to their residents and students to provide a safe environment where they would be free from invasions of person and sexual abuse.

88. Defendants had a duty to hire employees who would provide a safe environment for the residents and students.

89. Defendants had a duty to properly screen employees prior to hiring.

90. Defendants breached their duties by failing to adequately screen employment candidates, and by hiring employees who would commit acts of sexual abuse on children.

91. As a direct result of Defendants' breach, Plaintiff suffered numerous acts of sexual abuse, resulting in damages as set forth more fully above.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Seventy-Five Thousand Dollars ($75,000).

## COUNT IV – NEGLIGENT SUPERVISON AGAINST ALL DEFENDANTS

92. Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

93. Defendants owed a duty to adequately supervise their employees to maintain a safe and orderly environment for the residents and students of Defendants.

94. At all times relevant hereto, Doe Defendants were employed by the entity Defendants and under the direct supervision and employment of Defendants when the egregious and tortious instances of physical, mental, and sexual abuse took place.

95. Doe Defendants engaged in said egregious conduct while acting in the course and scope of his/her employment with Defendants, and/or accomplished the sexual abuse by virtue of his/her job-created authority.

96. The acts of sexual abuse committed against Plaintiff were committed on the premises of Defendant St. Gabriel's.

97. Defendants failed to exercise ordinary care in supervising their employees in the course of carrying out her job duties.

98. Defendants failed to prevent foreseeable misconduct of the individual defendants, causing harm to others, including Plaintiff.

99. As a direct result of Defendants' breach, Plaintiff suffered numerous acts of physical, mental, and sexual abuse, resulting in damages as set forth more fully above.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Seventy-Five Thousand Dollars ($75,000).

## COUNT V – NEGLIGENT RETENTION AGAINST ALL DEFENDANTS

100. Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

101. Defendants owed a duty to their students and residents to maintain a safe and orderly environment, and to be free from invasions of person and sexual abuse.

102. Defendants, by and through their agents, servants, and employees were put on actual notice of the sexual abuse and that Father Dominic was an unfit agent with dangerous and exploitative propensities.

103.     Defendants, by and through their agents, servants, and employees had constructive notice of the abuse by other Doe Defendants.

104.     Defendants failed to take further action to investigate and/or remedy the allegations.

105.     Doe Defendants were permitted to continue working around children, despite Defendants having actual knowledge of sexual misconduct toward Plaintiff and other students.

106.     As a direct result of Defendants' breach, Plaintiff suffered numerous acts of sexual abuse, resulting in damages as set forth more fully above.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Seventy-Five Thousand Dollars ($75,000).


## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS JOHN DOES AND JANE DOE

107.     Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

108.     Doe Defendant "Father Dominic" physically and sexually abused Plaintiff on a number of occasions; said abuse took place at least once or twice per month throughout his entire stay at St. Gabriel's, and consisted of:

   a. Forcing Plaintiff to perform oral sex on him;

   b. Forcing his penis into Plaintiff's mouth saying "this is the body of Christ" and requiring Plaintiff to say in return "please give me the body of Christ;"

c.  Threatening that Plaintiff would never see his family or siblings again and that he would be confined in St. Gabriel's forever if he did not comply with Father Dominic's demands for sexual gratification;

d.  Providing Plaintiff with wine and alcohol when he was in his early teenage years;

e.  Telling Plaintiff that he worked for God and that God would take away his family if he did not obey Father Dominic and comply with the abuse.

109.    Doe Defendant "Brother Joe Foxy" physically and sexually abused Plaintiff on a number of occasions; said abuse began in the spring of 1969 and continued regularly throughout his entire stay at St. Gabriel's, and consisted of:

a.  Regularly putting his hands down Plaintiff's pants and fondling Plaintiff's genitals;

b.  Regularly masturbating Plaintiff;

c.  Forcing Plaintiff to perform oral sex on him;

d.  Forcing Plaintiff to masturbate him; and

e.  Slapping Plaintiff.

110.    "Brother Joe Foxy" worked in the kitchen/pantry area and also oversaw the garden area outside. All instances of abuse by him took place in the garden or pantry areas which Brother Joe Foxy had sole oversight and control of.

111.    Doe Defendant "Mrs. Monaghan" physically and sexually abused Plaintiff on a number of occasions; said abuse consisted of:

a.  Regularly rubbing her body against his in an sexual and inappropriate way;

b.  On one occasion, making him sit in a chair while she masturbated him; and

c.  Regularly grabbing his buttocks and penis.

112. Doe Defendant "Mr. D'Alfonso" physically and sexually abused Plaintiff on a number of occasions; said abuse consisted of:

a. Forcing Plaintiff to undress and lay naked in bed with him on nights Mr. D'Alfonso slept at St. Gabriel's, while he rubbed against Plaintiff with an erection;

b. Rubbing his penis in between the cheeks of Plaintiff's buttocks;

c. Forcing Plaintiff to perform oral sex on him on multiple occasions;

d. Forcing Plaintiff to masturbate him on multiple occasions; and

e. One on occasion attempting to drown Plaintiff in a pool after Plaintiff accidentally splashed him during a game of basketball in the pool.

113. Doe Defendant "Mr. D'Alfonso" would prohibit the night watchman from coming and doing his rounds on the nights he stayed there, so that the sexual abuse would not be interrupted, directly evidencing his specific intent to sexually assault Plaintiff.

114. Plaintiff has knowledge that Doe Defendant "Mr. D'Alfonso" also targeted and preyed on and sexually assaulted another minor, W.G., in the same manner.

115. Doe Defendant "Brother Robert" physically and sexually abused Plaintiff on a number of occasions; said abuse consisted of:

a. Forcing Plaintiff and other children to take very cold showers;

b. Forcing Plaintiff and other children to bend over metal sinks and then beating them repeatedly with a baseball bat which was specifically modified with holes in it to provide less resistance and harder hits;

c. Forcing Plaintiff and other children to stand barefoot on hot asphalt until their feet were blistered and burnt;

d. Regularly subjecting Plaintiff and other children to "bend overs" which was a "game" he played wherein the goal was to hit the children in the buttocks hard enough that it lifted their feet off the ground; and

e. Forcing Plaintiff and other children to strip naked before being beaten for sexual gratification and to embarrass the children.

116. Doe Defendant "Brother Christopher" physically abused Plaintiff on a number of occasions; said abuse consisted of:

a. Regularly participating in "bend overs" with Brother Robert, beating Plaintiff and children hard enough that the blows would lift them off the ground;

b. One occasion hitting Plaintiff so hard that he lifted him significantly off the ground causing soreness, bruising, pain, and injury lasting for over a month.

117. Doe Defendant "Brother Arnold" physically abused Plaintiff on a number of occasions; said abuse consisted of:

a. Participating in "bend overs" with Brother Robert and Brother Christopher on two occasions, beating Plaintiff and other children with a bat with the goal to lift them off the ground.

118. Doe Defendant "Brother Peter" physically abused Plaintiff by slapping him in the head with emphasis on his large ring when Plaintiff told Brother Peter about the abuse by Father Dominic.

119. Doe Defendants acted with the specific intent to physically, mentally, and sexually abuse Plaintiff on numerous occasions.

120. Doe Defendants' conduct was extreme and outrageous, and exceeded all bounds of decency tolerated in a civilized society.

121. Plaintiff was a member of a fragile class as a result of his youth at the time of the abuse, and because of the special relationship between Doe Defendants and Plaintiff.

122. Doe Defendants were in a position of power over Plaintiff and exploited that power to sexually abuse a member of a fragile class.

123. As a direct result of Doe Defendants' egregious and outrageous conduct, Plaintiff suffered numerous acts of sexual abuse, resulting in damages as set forth more fully above.

124. As a direct result of Doe Defendants' egregious and outrageous conduct, Plaintiff suffered extreme and severe emotional distress.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Seventy-Five Thousand Dollars ($75,000), plus punitive damages.

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

125. Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

126. As a direct result of Doe Defendants' egregious and outrageous conduct, Plaintiff suffered numerous acts of sexual abuse, resulting in damages as set forth more fully above.

127. As a direct result of Doe Defendants' egregious and outrageous conduct, Plaintiff suffered extreme and severe emotional distress.

128. As a direct result of Defendants' negligence as set forth above, Plaintiff suffered numerous acts of sexual abuse, resulting in damages as set forth more fully above.

129. As a direct result of Defendants' negligence as set forth above, Plaintiff suffered extreme and severe emotional distress.

130.    Corporate Defendants are vicariously liable for the acts of their employees committed while operating within the scope of and with the authority as a result of their employment.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Fifty Thousand Dollars ($50,000).

## COUNT VIII – ASSAULT AND BATTERY AGAINST DEFENDANTS
## JOHN DOES AND JANE DOE

131.    Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

132.    Doe Defendants acted with the specific intent to physically, mentally, and sexually abuse Plaintiff on numerous occasions, as set forth more fully above.

133.    Doe Defendants' contact was harmful, offensive, and was in no way consented to.

134.    Doe Defendants' conduct caused severe physical and emotional harm to Plaintiff.

135.    As a direct result of Doe Defendants' egregious and outrageous conduct, Plaintiff suffered numerous acts of sexual abuse, resulting in damages as set forth more fully above.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Seventy-Five Thousand Dollars ($75,000)..

## COUNT IX – FALSE IMPRISONMENT AGAINST DEFENDANTS
## JOHN DOES AND JANE DOE

136.    Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

137. Doe Defendants intentionally imprisoned Plaintiff in secluded areas in order to carry out acts of sexual abuse.

138. Plaintiff had no reasonable means to escape in the secluded areas where he was imprisoned by Doe Defendants.

139. Plaintiff was powerless to disobey Doe Defendants as they were each in a position of power and authority over him.

140. As a direct result of Defendant's outrageous and egregious conduct, Plaintiff suffered numerous acts of sexual abuse resulting in extreme and severe emotional and physical harm, and other harm as set forth more fully above.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Seventy-Five Thousand Dollars ($75,000).

## COUNT X – VICARIOUS LIABILITY AGAINST ALL CORPORATE DEFENDANTS

141. Plaintiff Mr. Harris incorporates herein each and every paragraph set forth above, as if the same were set forth at length.

142. At all times relevant hereto, Doe Defendants were acting within the scope of his/her employment when the physical, mental, and sexual abuse occurred.

143. Defendants are liable for the torts of their employees acting within the scope of his/her employment.

144. Doe Defendants were acting within the scope of their employment when the egregious acts of physical, mental, and sexual abuse occurred.

145. Doe Defendants exploited the authority bestowed upon them by virtue of their employment in order to physically and sexually abuse Plaintiff Mr. Harris and other young children.

146. As a direct result of Doe Defendant's intentional and tortious conduct and Defendants' negligence as set forth above, Plaintiff suffered numerous acts of sexual abuse resulting in extreme and severe emotional and physical harm, and other harm as set forth more fully above.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants in excess of Seventy-Five Thousand Dollars ($75,000).

### COUNT XI – CLAIM UNDER 42 U.S.C. § 1983 AND 1985 AGAINST ALL DEFENDANTS

147. Plaintiff incorporates each and every paragraph above herein, as if the same were set forth at length.

148. Plaintiff had a protected interest in being free from physical and sexual abuse.

149. Defendants' repeated acts of physical and sexual abuse against Plaintiff, as set forth more fully above, were in clear violation of public policy and his civil rights under the law.

150. These repeated and egregious acts of physical and sexual abuse against Plaintiff were in clear violation of his protected rights under 42 U.S.C. § 1983 and 1985.

151. Defendants conspired with each other in order to cover up the acts of physical abuse, and to allow continued access to Plaintiff to perpetuate the physical and sexual abuse.

152. Defendants conspired and agreed to engage in multiple and repeated acts of sexual abuse against Plaintiff, and to cover it up and allow it to continue.

153. Defendants were acting under color of state law as a juvenile detention center, and the employees and agents thereof.

154.    Defendants knew their conduct was illegal, egregious, and in clear violation of Plaintiff's civil rights under the Pennsylvania and United States Constitutions.

155.    As a result of Defendants' conduct, Plaintiff has suffered pecuniary losses, harm to reputation, and severe and extreme emotional harm.

156.    Defendants' actions were willful, wanton, malicious, and in reckless disregard for Plaintiff's rights, and therefore Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff respectfully requests that this court enter a judgment in his favor:

(a) Awarding him compensatory damages;

(b) Awarding him punitive damages;

(c) Awarding him attorney's fees and costs of this action; and

(d) Granting other such relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues tribal to a jury lawfully convened.

Respectfully Submitted:

**MALLEY LAW**

Date: September 29, 2017        By:    /s/ *Joseph A. Malley*

JOSEPH A. MALLEY, III, ESQUIRE
Attorney I.D. No.: 27866
15 East 2nd Street
Media, PA 19063
(610) 566-8010